The record this morning is 518-0397 Hicks et al. v. O'Fallon Shiloh Emergency Medical Services. Are you ready to proceed? Yes, Your Honor. Okay. Jeremy Goebel for the appellants Jeremy Hicks and Isaiah Sampson. May it please the Court. Thank you. As to Hicks and Sampson's first point on appeal, the record is clear that there exists a material factual dispute regarding whether Mr. Sill, the operator of the ambulance at issue, did so in a willful and wanton manner. Because the City of O'Fallon's policies and procedures, as outlined in Jeff Wild, the Court Representative of the City of O'Fallon, stated that the policies require employees to operate ambulances at a slower speed in adverse weather conditions. And because of the factual dispute between Mr. Sill saying that he was going the speed limit, it should be clear that he didn't say he was going slower than the speed limit. In Mr. Hicks' testimony, that Mr. Sill was driving approximately 75 miles an hour, which would be greater than the speed limit. This particular dispute as to whether Mr. Sill operated the vehicle in a willful and wanton manner is a factual dispute that must be decided by a jury in this case. And as the Supreme Court in Pfister said, P-H, P-F, there are cases where it's only degrees of separation between a negligence and a willful and wanton case. There are also cases where it's only degrees between an intentional act and a willful and wanton case. Ultimately, though, as the Court in Young v. Forgis said, whether an action is willful and wanton is a fact question. We have cases, specifically Harris v. Thompson, for example, that talk about ambulances and what is needed for willful and wanton. And in Harris, our Supreme Court affirmed summary judgment, right? True. Tell me how your case is more gross in the negligence context than the Harris case was. Well, the issue in our case is that it was not disputed that the conditions were adverse. We had multiple witnesses, including the corporate representative of the city, saying that these conditions were adverse to the event of this crash. And that the policies specifically are that the ambulance must be operated at a slower speed in those situations. Okay, but that might be negligence. If we take those allegations as true, that's negligence, to operate a motor vehicle at a speed greater than the existing conditions. But what was it about this conduct in particular that made it gross negligence, such that you can get around the willful and wanton? I'm saying in this situation you can prove willful and wanton. And I agree. I think that this is at least negligence. I think whether it's willful and wanton is an issue for the jury side. Again, we're talking about degrees of separation here. Why is this a question of fact in this case? In this particular case, there's no traffic on this highway. That's what Mr. Sill stated. No traffic?  The lights were not on. But that doesn't help you. If there's no traffic, you can go faster, right? I mean, if there's lots of traffic, it seems it would be more negligent to go at a speed that's too fast for conditions if you're in a crowded situation. But the point is, because this was open road, this was not in what I would call an urgent emergency situation that would require lights and horns, Mr. Sill should have been following the directives of the city and going slower. There was no reason for him to go 5 or 10 miles an hour over the speed limit in these conditions as opposed to going 60, 55 miles an hour. That's a disputed issue of fact as to how fast he was going, right? True, true. But simply a disputed issue of fact regarding speed, is it your argument that that rises to willful and wanton or at least creates an issue of fact that should prevent summary judgment on willful and wanton, just speed alone? I would say no, not just speed alone, but in this case, we've got more than just speed alone. We've got speed plus adverse weather conditions plus the fact that there are no lights and that this was not what I, again, called an urgent emergency. What evidence is there of adverse weather conditions? My reading of the record indicated that Jeff Weil, who was a non-occurrence witness, was a supervisor, and he just testified that he had no reason to believe the weather conditions were not adverse. Is that evidence that the weather conditions were adverse? Is that an admission? I would say it is, but also there was Mr. Palmer, who was in the back of the ambulance, who said that the conditions were adverse at the time, that it had been raining for days. There was a testimony that when they picked the patient up, it was raining, but by the time they were on the road that it was at most a light sprinkle. He didn't even have his windshield wipers on. We'll have to see what Mr. Palmer said, but I believe he said something to the effect that it was raining pretty well at that time. Well, he did say he wasn't using his windshield wipers, the ambulance driver. True, and that's in the record at page 142, line 7 to 17. He also testified that he felt that the vehicle was completely under control, that he had no issues until it wasn't. But he didn't feel that he was in any danger concerning the conditions and the speed at which he was traveling. All true, although I would point out that we're not alleging that he did this intentionally, that he knew that he was going to cause harm, but that this was willful and wanton, that the way this vehicle was being operated at the time, it was being operated with the conditions, given the factual disputes about the speed, that this is a factual issue for a jury to decide whether this was willful and wanton. And a jury could ultimately say, no, it isn't. Here are the instructions on willful and wanton, conscious disregard. I don't think he made your case, Mr. Sampson, Mr. Hicks, but ultimately I think that's a fact issue for the jury to decide. Moving on to our second point regarding the statute of limitations. Again, it's a two-year statute of limitations for governmental entities for cases arising out of patient care. And the courts have consistently said, and you kind of look at this like a Venn diagram, or I guess it's really more a Euler diagram, one big circle, those are patient care cases. Within patient care cases are medical malpractice cases. This is not, we're not alleging a medical malpractice case here, but we are alleging that this case arises out of patient care. It's undisputed under Wilkins that- How is the passenger ever a patient? The passenger in the front, Mr. Hicks. He's not, and we haven't alleged that he was a patient. But as the Wilkins analysis makes clear, one party in these types of cases can't have a greater or lesser right than another party. So, for instance, in Wilkins, the issue was a non-patient, non-even occupant of the ambulance gets hit by the ambulance. Is this a case where they need to prove willful and wanton? Or is this a case where they can proceed on a straight negligence case? As the court said, this is a case because this ambulance transport, which, by the way, was a non-emergency transport, arose out of patient care, or out of medical services, that the undisputed non-passenger, non-occupant, non-patient still had to prove a willful and wanton case. In our case, this is like the mirror image of that case, and the issue is whether Mr. Hicks would have a lesser right of recovery than Mr. Sampson, who was the patient. So the whole issue here is this ambulance ride. It's a medical service. That is settled law by the Supreme Court. Does a passenger in that ambulance also have the same rights of recovery as a patient? We've talked about distinguishing this type of medical transport from other sorts of transports. This isn't a case where, say, an inmate is being transferred by a sheriff to a jail. This isn't a case where a police officer is transporting someone to the station or a jail. This isn't a case where a bus is transporting passengers or a taxi cab. There are no situations where Sampson and Hicks could be injured while occupying an ambulance unless it was something, an event, that arose out of patient care. Mr. Palmer acknowledged we were providing patient care to Mr. Sampson. This is their job. The job of a paramedic and an emergency medical technician is to provide patient care, and they do that by providing medical services, which under Wilkins includes transporting patients. Wilkins doesn't really say that. I mean, Wilkins, the holding of Wilkins is not what you're exactly saying. I mean, I was a little confused about your argument with Wilkins in this case. Are you saying that any time a family member or a passenger gets in the car in the passenger seat where there's a person in the back receiving care, that the two have equal statute of limitations rights? Yes. And so Sampson would have had a two-year statute clearly, correct? Yes, sorry. Under the statute. And then so every passenger or family member should have the same right as the recipient of the care. Yes. If they're in the same ambulance, if they're in the same collision crash involving that ambulance, just like in Wilkins where the standard for the non-patient, non-passenger was the same as would have been required of a patient or occupant of the ambulance. That's what Wilkins said. It called any other... Wilkins talks about making sure that people have consistent rights under the statute. Right. It called to give family members or other medical personnel a greater right of recovery. In other words, in that case, a negligence standard as opposed to a Wolf-Montan standard, illogical. It called that result illogical. And the same would be illogical in this case to give one person in an ambulance crash a greater right of recovery than another person in the ambulance crash. The problem that I have with your, I mean, you've taken a line out of Wilkins, but as I recall and I'm looking at it, this was a third-party accident. Right. This wasn't somebody riding in an ambulance. Correct. And so basically the court was saying that third parties who are involved with an accident should have the same kinds of regress, if you will. But it really had nothing to do with anybody riding in an ambulance, did it? It didn't, although Cory Wilkins did talk about there are other folks that will be in an ambulance, including family members and other medical personnel. So I would say that while Wilkins didn't present that issue, of there also being someone in the ambulance that was not the person in the back, like a family member or other medical personnel, I think the language in Wilkins is clear that it was also extending that argument to folks that were not just third parties, in other words. So not just folks outside of the ambulance. Again, it looks to me, Wilkins was clear that we're looking to the nature of the services, not the recipient of the services. It talked about how the legislature knows how to write these statutes. It could have limited it had it chosen to do so. But again, it's not the fact that Hicks was not the person in the back of the ambulance that matters here. What matters is whether this transport of Hicks and Sampson to the hospital is an event that arose out of patient care. In Wilkins, though, did the trial court grant summary judgment to the defendant? What was the holding in Wilkins? What was the ultimate holding by the Supreme Court as far as the facts of the case? The ultimate holding in Wilkins was that a third party involved in a collision with an ambulance that was transporting someone, I believe it was to a nursing home, it was a non-emergency transport, has to prove the same burden of proof in an action against a governmental entity as a person riding in the ambulance, as a patient. But ultimately, the Supreme Court, looking at the facts of the case, which speed was an issue, there weren't lights on, very similar to your case, ultimately the Supreme Court in Wilkins said that there was no willful and misconduct and would not remand for a trial. True, true. I mean, again, our case, I think, is better than that sort of case. I believe Wilkins was the intersection, there weren't lights on where this crash occurred. Wilkins is important for us, of course, for the statute of limitations issue and whether this whole event rose out of patient care. And I would be lying, and I've already acknowledged that there are other cases cited by the city that the trial court has found as a matter of law that the allegations, the evidence didn't rise to the level of willful and wanton misconduct. I'd just go back to this case isn't just about speed, this isn't just about being operated in adverse weather conditions, this isn't just about not having lights on or sirens going, which would seem to indicate a more urgent situation. This is a compilation of all of that evidence as to whether this reaches the level of willful and wanton as opposed to a mere negligence. The Wilkins case that you refer to fairly often is, I mean, that was concerning immunity as opposed to the limitations periods, correct? I mean, it doesn't even touch on the limitations periods. I didn't catch that last part. I know it did not address the limitations period, but I didn't catch the part right there. It only concerns with immunity. Correct. Correct. And it's whether this is a willful and wanton situation as opposed to whether a plaintiff in that type of case can pursue a negligence. And this, of course, would be a greater right of recovery. Do you agree that if this Court finds that the trial court properly granted summary judgment that we would not reach the statute of limitation, that there would be no reason to reach the statute of limitation issue? I agree. Yep. And I believe that's all. Thank you. Thank you. All right.    Thank you. I thank you very much. Thanks. Thank you. Thank you. Thank you. City of Old Fallon, take your time. May it please the court, counsel. My name is Brian Fonk. I represent the City of Old Fallon in this matter. I'd like to start with the statute of limitations question first. Basically, everything that this court could consider in interpreting Section 8-101B, which is the statute of limitations provision that the plaintiff claims applies here, militates in favor of the city's position. The statutory language, this case law, the legislative history, and public policy, all of those demonstrate that the one-year statute of limitations that's set forth in 8-101A applies in this case. First, the statutory language restricts Section B to patients. It's undisputed, as we've heard already, that Mr. Hicks, and this argument only applies to Mr. Hicks, Mr. Hicks was not a patient in any sense of the word. He was just a passenger in a motor vehicle. Well, the statute doesn't say just patients. The statute uses this language arising out of patient care. So when you say it just applies to patients, I'm not sure that that's true. Why would the legislature use that language? Well, it's my interpretation that you have to be a patient, you know, the city's position is that you have to be a patient in order to invoke Section B. What if Mr. Hicks would have been sitting next to the paramedic, handing him saline, for example? Would he then have the two-year statute? No. There's other reasons why not. But whether he was a patient or not, the second part, he wasn't receiving patient care. It says arising out of. So I can see using the words related to, maybe, maybe narrower. I'm pulling that out of my hat. But you see what I'm saying? I don't understand the use of the words arising out of. And the argument is, as I understand it, do we really allow people in the ambulance to have to fight over who was doing what? I mean, should the passenger have a different statute of limitations than if he were sitting right next to a paramedic and handing him a Band-Aid or handing him a thing of saline to help with the care? I don't know. I mean, I'm asking. Sure. My first argument, I guess, would be that Mr. Hicks wasn't doing any of those things. The argument is you can't have two different standards. Or statutes. I guess it's not only our interpretation of the statutory language, but also what the Supreme Court has said. The Supreme Court has, in Kauffman, interpreted the language arising out of patient care. And I'll just cite from Kauffman v. Schroeder, and citing another one of its cases, Illinois Supreme Court concluded that an injury arises out of patient care if the injury is causally connected to the patient's medical care and treatment. So you have to be a patient according to... You have to have a causal connection. A causal connection. It also cites another definition of arising out of patient care to originate, to stem from, or result from the patient's medical care or treatment. So I would say that Kauffman, Illinois Supreme Court, is telling us that you have to... Or arising out of patient care means you have to be first a patient. The second part of this is that Mr. Hicks was not receiving any care, any medical care of any kind. You know, I read that argument, and I found that a little bit specious in the fact that if I'm in an ambulance, I hope there's care. I mean, really, if you're being supported or... I mean, why have an ambulance? Well... I mean, are we really going to start drawing lines between exactly what was happening? Aren't you being supported if you have a paramedic sitting next to you? It's not disputed in this case that Mr. Hicks' injuries arose out of any patient care. It arose solely out of a motor vehicle accident. I'm not asking that. I'm talking about when he gets into the ambulance. At that point, there's a paramedic sitting next to him and somebody's driving. Is he getting patient care at the point that he gets into the ambulance? No. He's receiving a ride in a motor vehicle. He's not receiving any patient care. And as I go out of line here, you'll see that the intent of the legislature wasn't that Mr. Samson would be under the 2-year statute of limitations either, even though he was in the back being treated by medical personnel. This is still not patient care as far as the statute is concerned. But Mr. Hicks admitted that his injuries were solely from a motor vehicle accident. And I refer back to Kaufman v. Schroeder. Kaufman was a situation where a patient was in a hospital, was undergoing a medical procedure, and the doctor allegedly sexually assaulted the patient. The plaintiff sued and said the statute of limitations was 2 years under Section B because she was indeed receiving patient care at the time of the sexual assault. In other words, if that patient in that case, say, sister was with her, and the sister happened to be in the room with the patient, and the doctor assaulted the sister, it wouldn't apply to the sister. It wouldn't apply to the sister either. And the court concluded that, citing directly from the case, that we find that Kaufman's injury arose out of Dr. Schroeder's sexual assault and not any medical care she received from him. Here, we're not talking about... But in Kaufman v. Schroeder, didn't the doctor just come in and before he really started any care, he assaulted her? That's not my understanding. I believe she was under an anesthetic and not aware that it happened. That's my understanding of the case. But that's my point, is there wasn't anything being done to her by him except the assault. Well, I would say if you're put under, the medical procedure has begun, you're also a patient in a hospital, so I believe that she... Yeah, I don't remember. Was he the anesthesiologist? I don't recall. I don't recall. I don't believe so. Okay. But anyways, during the medical procedure, my argument would be it did occur during the medical procedure, and the court said, well, this is not... What happened here isn't an injury arising out of patient care. It's not out of medical care, just as Mr. Hicks' injuries arose solely from a motor vehicle accident and not from any care that was being provided. In the example you provided, Justice Gates, if he was back there involved in the medical care and something happened, maybe it's a different story, but here he was sitting up front. He was sequestered from the back of the ambulance, and he was not involved in any way in the medical care being provided to Mr. Sampson. Also, the plaintiff in his brief said, this is not ambiguous. Don't look at the legislative history. The reason why the plaintiff doesn't want you to look at the legislative history is because it spells out very clearly the intent of the legislature with 8-101B. And in Kaufman, the court cites to this history. Basically, the history is that the legislature believed it was unfair to have a two-year statute of limitations for people that went to private hospitals versus a one-year statute of limitations for people who went to public hospitals. So they set out to change that, and that is why they enacted Section B. Patient care relates to patients in hospitals. So Sampson wouldn't even be eligible for Section B, let alone it narrating somehow to the benefit of Mr. Hicks. So the legislative intent is clear in the legislative history. Finally, the public policy here dictates that plaintiff's position be rejected. This would lead to their interpretation or a plaintiff's interpretation of the statute would lead to absurd results. If Mr. Hicks was entitled to a two-year statute of limitations, then anybody who was hit by an ambulance would be entitled to a two-year statute of limitations as well. So the inequity that the legislature tried to solve for public versus private hospitals would let us head again in this situation. If you were hit by a police car, you'd have one year to file a lawsuit. If you were hit by an ambulance, you'd have two years to file a lawsuit. It's just creating a problem that the legislature intended to solve by enacting 101B in the first place. So it's the city's argument that the statutory language is clear. If not, the Illinois Supreme Court in Kaufman makes it clear that Mr. Hicks is not entitled to a two-year statute of limitations. If that's not clear, the legislative history certainly clears it up by saying this applies to only people in hospitals and also the effects of the interpretation that plaintiff has proffered. For those reasons, Mr. Hicks' claim is barred under the one-year statute of limitations in 8-101B. And briefly, I'll just address Wilkins. Wilkins has absolutely nothing to do with this case. It is, as Justice Barber has pointed out, it's an immunity case. It has nothing to do with limitations. It has to do with a different chapter and a different statute with different statutory language. The finding in Wilkins, the Illinois Supreme Court said that the language is not limited. So, therefore, the Wilco Morton standard applies to people in the ambulance and third parties who come in contact with the ambulance. Contrary to Wilkins, and that's based just on the section 3, I think, .150 of the EMS Act, specifically the interpretation of that statute. This is a different statute with different language. The interpretation of that statutory language is not applicable here. So Wilkins is not on point in any way, shape, or form. So just to make sure that you get to this next issue, as Justice Cates had suggested, if we find that the summary judgment was proper, it's very likely here that we don't even get to that statute of limitations argument. Can you address why the summary judgment was proper? Was proper as to the Wilco Morton? Yes. Yes. As far as the Wilco Morton, I believe the court stated it. There are numerous cases directly on point involving ambulances that show conduct in far more regions than what was at issue here. Harris v. Thompson, Williams v. Evanston, Hampton v. Cashmore, these were all cited in the city's brief. But I also take issue with some of the facts that were proffered by the plaintiff in support of their argument. Specifically with regard to the speed and also Mr. Wild's testimony. Mr. Wild, as Justice Morton pointed out, was not an occurrence witness. He had no idea what happened. All he basically said was, I have no reason to dispute that the ambulance was being operated in adverse conditions. I wasn't there. As far as speed is concerned, the driver, Mr. Sill, testified that he was driving between 60 and 65 miles per hour. The plaintiff said he was going faster than that. But the plaintiff was texting the entire time. And the city employees. Is that in the brief, sir? It should be. It's in his testimony. But the more important issue was that the city employees testified that you can't see the speedometer from the passenger seat. So his testimony regarding speed was disputed and demonstrated to be impossible for him to determine. All of the other factors involved related to the accident are in favor of the city. There was no traffic around. It was not raining at the time of the accident. The driver had been on the highway for numerous miles and hadn't had a problem to that point. He said he didn't activate the lights and sirens because he was trying to be safer. He said that his testimony was that cars, vehicles, other drivers react differently for some reason when you have the lights and sirens on and it causes more of a problem. So he was better off operating without them. But in this case, whether it was lights and sirens on, when they were taking a person, an epileptic person, having seizures over to a hospital, I don't think in that situation driving under the speed limit with more issues to speak of amounts to a Will 411. In fact, the case law demonstrates that it doesn't. The fact that there was an accident is not evidence of Will 411 conduct. So all of the factors and all the facts in this case, most of which are not disputed, demonstrate that this was not Will 411 conduct. It does seem that we have two very disputed facts, weather conditions and speed. Those two facts. Well, as to the speed. What else is disputed? I don't think there's any. I don't think Clarence is disputing any other facts except for the term adverse conditions, which I don't know what that means. To me that's weather. Okay. But my point is if you have two facts that are disputed, weather and speed, and then you have this context, context being some policies for the city of O'Fallon. We apply the two disputed facts to the context, right? The context. The fact is not disputed that there's a policy, right? And isn't there a fact that this ambulance driver was reprimanded? Yes. Does that play into the issue at all in your opinion? No. I don't think the reprimand or the department policies play any role in this. Williams v. Evanston, a case we cited in our brief, the driver violated Evanston's department policies. They were still granted summary judgment. On top of that, Mr. Wild, who wasn't at the accident, testified that whenever there's a one-car accident, we have a high standard. You get reprimanded. Whether it was your fault, not your fault, we're just assuming it was your fault. So I don't think that demonstrates willful and wanton conduct. It just demonstrates that the city has no tolerance for one-car accidents. What do you think the public policy would be if a court, every time a city reprimanded an employee, if a court allowed that issue to be evidence of willful and wanton, do you think the cities would continue to have a high standard? Well, I think that's a good point. The public policy might dictate that that is not something that's considered and that the actual facts of the accident should be solely considered because then you may have a situation where you alter the behavior of the municipalities and they're not taking action and not striving, as the city of Pelham did, for complete safety. That fact, I don't believe, has any relevance to the analysis. As far as the weather conditions, just briefly, plaintiffs cited Mr. Palmer's testimony. Mr. Palmer testified that he was in the back and that you can't see out of the back and that his attention was devoted to Mr. Sampson. So when he says it was raining, yes, when he got in the ambulance in Shiloh, it was raining. All of the testimony, including Mr. Sills, was that it wasn't raining when the accident occurred. I think he said that he had his wipers on intermittent and that there was no puddling on the roadway, there was no problems. It was clear sailing over St. Louis, unfortunately, that didn't happen. So I wouldn't say that there's a dispute of fact with regard to weather conditions because the evidence they're relying on, the testimony of Mr. Palmer, clearly should be discounted, if not ignored. No, but that's your view, and then they're going to have a counter view, which makes it a dispute of fact. Well, it's not my view. Mr. Palmer... I mean, there's a witness that says X, and then there's a witness who says Y. I mean, the other witnesses I could see. I understand your argument. But I would say that Mr. Palmer's testimony, other testimony that they're not telling you, demonstrates that Mr. Palmer had no idea what the weather was at that time. He accurately states that it was raining when we left, but after that, he's not reliable in any way, shape, or form. And I think Judge Colbert could determine that Mr. Palmer had no idea if it was raining or not. And, in fact, even Plaintiff states in his testimony that it wasn't raining at the time of the accident or the rain was not what it was when they left. So for those reasons, I believe, first and foremost, statute of limitations applies here. The one year statute of limitations applies as to Mr. Hicks and that Judge Colbert's ruling as to Willful and One should be upheld as to both of the plaintiffs. Thank you. Mr. Fung, how are you related, if at all, to Dale Fung? He's my dad. Well, tell him a little. Thank you. Thank you. He's retired and living in Florida. Yeah. Well, should we all? Yes. At my age. Thank you. I didn't suspect it as much, but I just wanted to – I'm not trying to embarrass you. I just wanted you to say hello to your dad. I do it all the time, though. Okay. Thank you. Mr. Goebel. I'm not. Me either, obviously. Well, I'm jealous of that. Thank you for the support, counsel. With respect to the reprimand, the court addressed how this would affect, say, city employee behavior going forward. This is certainly evidence that it really should be presented to a jury in this case as to whether the actions were willful and want. And, again, these are issues about violation of policies and procedures of the city of O'Fallon. If this type of evidence wouldn't be allowed or is not relevant in this type of case, what's going on? That's not relevant? The policies? Not the policies. The reprimand. Oh. So you agree that's not relevant? No, no. I think it is. I think it is relevant. Oh, I thought you just said it wasn't relevant. I'm sorry. I would say that it were. Yeah, for argument's sake, if it isn't relevant, Mr. Funk said that the reprimand itself is not relevant to whether this was willful and wanton conduct. I obviously disagree with that. Were that the case, that this type of evidence couldn't come in to determine whether one's actions is willful and wanton? I want to ask you the same question. If the city of O'Fallon takes the position that we reprimand anyone who's in an accident, that factual finding and standard is very different than what's going to happen in a court of law here under a statute, right? True. We're not sure what the standard is. The standard is gross recklessness or disregard, which is willful and wanton. I'm sorry. I meant for the issuing a reprimand. Okay. So, I mean, was that decided and argued before the court as to the admissibility of this reprimand? I don't remember that. No. I'd imagine that would be an issue in a motion of limine prior to trial. That was simply a fact that we had in support of our argument that this was willful and wanton. But my point is, during the argument on willful and wanton here, that was not part of the discussion with the court. Because, as you say, it probably would be an eliminate motion. Maybe it should have been, but I don't know. Well, you know, I don't know what the court's decision would be on that particular issue. Again, I wasn't – You didn't think it was important enough to raise for the willful and wanton issue. Well, I think I did. In fact, it's the last sentence of our second – no, on page 6. No, I'm talking about before the court in the argument. In our briefs. The trial court. Yeah. Well, it's not in the briefs. I think it should have. I think it should have been. I could swear that it was. I'm asking. I'm asking. Did the argument to the trial court have anything to do with the reprimand? Yeah. It was in our facts. You may find this surprising. I think these facts were copied from prior trial court briefs, just with citations to the record. These were the relevant facts that we were presenting to trial court in this case. So ultimately, I think it should be something that should be allowed in to determine willful and wanton. Whether it is or isn't, that's going to be an issue for the trial court and then maybe this court again to decide. There was a suggestion, though, that the reprimand was an automatic. I mean, it was just policy of the city over the phone that there's an automatic reprimand any time there's a one-car accident. Was there any discussion as to an investigation by the city before issuing that reprimand as far as, you know, to assess some type of fault? Because I believe what I heard was there was not. The corporate representative did say that ultimately it is the operator's obligation to operate these safely. So, again, they're not a court. They don't give jury instructions saying, well, the only issue of reprimand is willful and wanton. But given the totality of the circumstances, I think it's something that should and would come in for purposes of willful and wanton misconduct. Real briefly to address Kaufman, again, the injury there arose from a sexual assault. The sexual assault could have happened anywhere. It could have happened in the parking lot. It could have happened in a bathroom. It's not a but-for test, as the Supreme Court in Borlaug and Mercola stated. But it's different from, it's a different situation from this case where the ride itself was a medical service. We can think about consortium claims, for instance. So say there's a medical negligence case. The spouse would have a consortium claim, but, of course, they're not the patient. Thank you. Okay, thank you. This matter is going to be taken under advisement, and the Court's going to take a short recess.